Forsyth *v*. Rathbone.

---

---

SARAH FORSYTH, adm'x, and JAMES R. JESSUP, adm'r, &c. *vs.* JOHN F. RATHBONE, executor, &c. and others.

A testator, by his will, gave several pecuniary legacies to different relatives; an annuity of $5000 to his widow; an annuity of $3000 to his son D.; and after reciting the death of his son W., who had left a widow and four children him surviving, for whose support and maintenance the testator was desirous to provide, he gave to the said grandchildren six stores, in Albany, and to their mother the rents thereof until the youngest of said grandchildren should arrive at the age of 21; upon the happening of which event he gave to his said daughter-in-law an annuity of $1000, so long as she should remain the widow of W., in lieu of said rents. The whole estate of the testator, other than that portion of it specifically devised, was, after the payment of the legacies, to constitute the general fund, out of which the annuities were to be paid. By the 14th section of the will, the testator desired that his executor should not hasten the sales of any of the real estate, any farther than he should deem for the best interest of the testator's estate; and in case there should remain a surplus of profits arising from stock and other property, after paying the annuities, the executor was directed to reinvest, either in good stocks or on bond and mortgage, such surpluses, from time to time, which should be added to the general fund. By the 16th section, the testator directed that after the death of his wife, his executor should set apart from the general fund sufficient of the best and most reliable securities, from the annual profits of which the annuities to D. and the widow of W. were to be paid. He then devised and bequeathed all the rest, residue and remainder of his estate, not otherwise devised or disposed of, by his will, "to all his grandchildren, share and share alike." The testator then repeated the same devise, in effect, in these words: "And after the decease of my son D. and of my said daughter-in-law, all the rest, residue and remainder of my estate, whether real or

Forsyth *v.* Rathbone.

personal, I give, devise and bequeath the same to all my grandchildren, to be equally divided between them, share and share alike." By a codicil to the will, the testator directed that upon the death of his wife the whole income of the general fund mentioned in the 16th section, except so much as should be required for the payment of the annuities, should be reinvested and accumulate until his youngest grandchild mentioned in the will should arrive at the age of twenty-one years. That from and after that event, the whole income of said fund should be equally divided between his said grandchildren, until the death of his son D. and the widow of W., and upon the death of both of them the final division of the estate between the grandchildren should be made. By another codicil, the testator authorized and empowered his executor, in case of the marriage of either of the granddaughters, before the time arrived for the division of the estate, to advance to such granddaughter, out of the share of the estate to which she would be entitled, a sum not exceeding $6000; also, to advance to his grandson R., on his arriving at the age of twenty-one years and desiring to engage in business, a sum not exceeding $10,000; and the annuity of $1000 to his daughter-in-law was directed to be continued and paid to her during life.

*Held* 1. That the testator having *directed* his executor to sell all his real estate, not specifically devised, all the real estate not so devised was to be considered as converted into money from the time of the testator's death.

2. That by the terms " all my grandchildren," in the 16th section, the testator meant the four children of his deceased son W., who survived the testator.

3. That the devise or bequest to the grandchildren, in the 16th section, though in form a future devise or bequest, was in effect a present devise or bequest; and by it the four grandchildren of the testator, on his death, took equal *vested* interests.

4. That the 16th section of the will was, substantially and in effect, a bequest of the whole general fund contemplated by, and to be constructed under, the will, to the four grandchildren, in equal shares, subject to the annuities, and to the trusts and guardian care created by the will and vested in the executor, in and over the fund.

5. That from the whole will, including the codicils, it was plain that the testator intended that the final division of the general fund, out of which the annuities were to be paid, should be postponed until after the death of the three annuitants.

6. That the will created a trust. That the whole estate, except that specifically devised or bequeathed, was to be considered, in the hands of the executor, as money or personal property; and that his office as executor, and the duties imposed upon him by the will, as such, necessarily called for and implied a trust in him; and showed that the testator intended the executor should have the custody and management, and legal title, of the fund, until the final division; and that he should keep it together until such final division.

7. That the direction that the surplus interest or income should be accumu-

lated for the benefit of all the grandchildren, until the youngest attained his or her majority, was void, so far as it provided for an accumulation for the benefit of any of the grandchildren after they should have attained their majority.

8. But that this direction for an unlawful accumulation did not affect the validity of the bequest of the fund, or of its surplus income, to the grandchildren. That as the grandchildren severally attained their majority, they would be entitled to their share of the surplus income, notwithstanding the direction for accumulation.

9. That the whole will was valid, except the direction for accumulation for the benefit of grandchildren after they should have attained their majority.

APPEAL from a judgment entered at a special term. On the 8th day of September, 1854, Russell Forsyth, of Albany, physician, executed under his hand and seal, and made and published his last will and testament, bearing date that day, by which he devised and bequeathed as follows :

   " *First.* I direct that all my just debts, funeral expenses and charges be paid out of my personal estate, by my executors hereinafter named. *Secondly.* I give, devise and bequeath to my wife Sarah, all my household furniture, together with my plate, books, pictures and ornaments, and all my wearing apparel ; also all my horses, harness, carriages, wagons and sleighs ; also all my farming and garden implements that I may have, with all my cows and young cattle that I may have, upon my homestead place where I reside in Livingston, in the county of Columbia, with full power to dispose of the same by will or otherwise as she shall see fit, and I desire that no inventory be taken of the same. *Thirdly.* I also give, devise and bequeath to my said wife Sarah, my household farm, situate, lying and being in the said town of Livingston, as I purchased the same of Carroll Livingston, containing about seventy acres, be the same more or less, to have and to hold the same to her, my said wife, her heirs or assigns forever, unless I happen to sell and dispose of the same in my lifetime, in which case this devise to be null and void. *Fourthly.* I also give and bequeath to my said wife Sarah, yearly, and every year during her natural life, the

sum of five thousand dollars; which sum I do hereby direct my executors hereinafter named, yearly to pay to my said wife, in quarterly payments of twelve hundred and fifty dollars every three months, out of a general fund which I will hereafter set apart for that purpose. This provision I have deemed ample and sufficient for the support of my wife during her life, and shall be in lieu of dower on my estate. *Fifthly.* In regard to my son, Douglass Forsyth, I desire to make ample provision for his support out of my estate. I do therefore give to my son Douglass, yearly, the sum of three thousand dollars ($3000) during his natural life; and I direct my executor to pay said sum yearly, in quarter payments of seven hundred and fifty dollars every three months, from the general fund belonging to my estate. And I desire that my son Douglass shall live with my said wife, and be a member of her family, so long as she shall continue housekeeping; and I do hereby cancel and discharge all claims that I have against my son Douglass, and which may be found among my papers after my decease. *Sixthly.* I give and bequeath to my sister, Nancy Rathbone, the sum of five hundred dollars, to be paid to her in six months after my decease, by my executor. *Seventhly.* I give and bequeath to my niece, Julia Rathbone, daughter of my sister Nancy, the sum of five hundred dollars; which I direct my executor to pay to her within six months after my decease. *Eighthly.* I give and bequeath to Eliza B. Seymour, sister of my wife, and now wife of the Rev. Charles G. Somers, the sum of five hundred dollars; which I direct my executor to pay to her in one year after my decease. *Ninthly.* I give and bequeath to Catharine Seymour, widow of William H. Seymour, deceased, the sum of five hundred dollars; which amount I direct my executor to pay to her within one year after my decease. *Tenthly.* I give and bequeath to Mary Seymour Concklin, daughter of my friend Alfred Concklin, Esq., the sum of five hundred dollars; which amount I direct my executor to pay to her one year after my decease. *Eleventhly.*

I give and bequeath to the New York Baptist Union, for ministerial education, for the endowment of a scholarship in the theological school under its control, the sum of one thousand dollars; which amount I direct my executor to pay within one year after my decease, to the person legally authorized to receive the same. *Twelfthly.* Whereas, I have met with a grievous loss in the death of my son William, who died leaving his widow and four children him surviving; now I am desirous of making ample provision for the support of his said widow, and for the support, education and maintenance of his children: therefore, I give, devise and bequeath unto said grandchildren, the children of my son William W. Forsyth, late of the city of Albany, six brick stores which I own, situate in State street in the city of Albany, in one block, and which cost me sixty thousand dollars; also one dwelling house situate in North Pearl street, which I purchased from Thomas W. Olcott, and which is now occupied by the widow and children of my said son William, and which said dwelling cost me the sum of twenty-five thousand dollars. It is my will and pleasure, and I do so order and direct, that my daughter-in-law, the widow of my son William, shall, so long as she remains the widow of my said son, and until the youngest child of my son William shall attain the full age of twenty-one years, continue to occupy and enjoy my said dwelling house in North Pearl street in Albany, without any charge for rent; and I also direct that the rents arising from my said six brick stores in State street in Albany, shall yearly be paid to my said daughter-in-law, until the youngest child of my son William shall arrive to the age of twenty-one years, to enable her to support, educate and maintain my said grandchildren; and upon the arriving of the full age of twenty-one years of the youngest of my said grandchildren, then I direct that the said six stores and dwelling house shall belong to my said grandchildren, and be possessed and enjoyed by them, share and share alike. And upon the happening of this event, instead of the rents,

Forsyth *v.* Rathbone.

I give to my said daughter-in-law, so long as she shall remain the widow of my said son William, annually, the sum of one thousand dollars; which I direct my executor to pay to my said daughter-in-law in quarterly sums of two hundred and fifty dollars, out of the general fund belonging to my estate. The said six brick stores in State street, and the said dwelling house in Pearl street, in Albany, that I have given to my grandchildren, the children of my son William, I give the same to them and to their heirs and assigns for ever. Whereas, I have made large advances for my son William in his lifetime, now I direct that all claims due to me from the estate of my said son William shall be canceled; and I do hereby cancel the same, and direct that no claim be made upon the estate of my son William for any claim that shall be found among my papers after my decease. *Thirteenth.* Whereas, I am the owner of considerable real estate not devised to either my wife or my grandchildren: now I do hereby direct my executor, hereinafter named, to make sale of all such real estate at such times and for such prices as he shall in his judgment deem for the best interest of my estate. And for that purpose I do herein and hereby empower him, my said executor, to execute and deliver good and sufficient deed or deeds to the purchaser or purchasers thereof, as he shall from time to time make sales; and all the moneys arising from said sales, with all bonds and mortgages or other securities taken in payment thereof, shall go towards forming a general fund belonging to my estate. And to increase said fund, I direct that all demands due to me at my decease, when collected, and all my rail road and bank stock, and property of every description not herein specifically devised by me, shall constitute and form said general fund belonging to my estate, out of which I intend the yearly payments or annuities payable to my said wife Sarah, and to my son Douglass, and to my daughter-in-law the widow of my son William, as mentioned and set forth in this my will, shall be paid by my executor. *Fourteenth.* Whereas, I have perfect

confidence in the judgment and prudence of my nephew John F. Rathbone, of the city of Albany, whom I intend naming as my executor, I therefore desire that he shall manage my estate in a prudent and judicious manner. And as I believe that I now own of good available stock, the profits from which will yearly meet all claims upon my estate, I therefore desire that my said executor shall not hasten the sales of any of my real estate any faster than he shall deem for the best interest of my estate; and I do further direct my said executor, in case there shall remain a surplus of profits arising from my stock and other property, after paying the yearly demands due to my wife and my son Douglass, and my daughter-in-law, to reinvest, either in good stocks or on bond and mortgage upon good unincumbered real estate, such surpluses from time to time which shall be added to the general fund belonging to my estate. *Fifteenth.* It is further my will and pleasure, and I do hereby reserve the right, to pay any or either of the above legacies, if I shall deem it advisable so to do in my lifetime; and any entry, statement or memorandum upon my books of money having been paid to any or either of the said legatees, shall be deemed full and satisfactory evidence of the same having been paid to such. *Sixteenth.* Whereas, after the death of my wife, there will be and remain a large amount of stocks and property belonging to the general fund of my estate, now I order and direct that there be a sufficient amount of the best and most reliable stocks set apart as a fund, from the annual profits of which the yearly payments to my son Douglass and to my daughter-in-law shall be made; and the rest, residue and remainder of my estate not otherwise devised or disposed of in this my will, I give, devise and bequeath the same to all my grandchildren, share and share alike. And after the decease of my son Douglass and of my said daughter-in-law, all the rest, residue and remainder of my estate, of every name and nature, whether real or personal, I give, devise and bequeath the same

to all my grandchildren, to be equally divided between them, share and share alike.

I do hereby nominate, constitute and appoint my nephew John F. Rathbone, of the city of Albany, merchant, executor of this my will; and in case of his death during the lifetime of my wife and of my son Douglass and of my daughter-in-law, and before a final distribution of my whole estate, then and in such a case I do hereby nominate, constitute and appoint my friend Ira Harris, of the city of Albany, and my friend Thomas W. Olcott, also of the city of Albany, if living, to act as my executors in the room of and in the stead of my nephew John F. Rathbone.

In regard to my real estate situated in Livingston, Columbia county, not devised to my wife, as it will be inconvenient for my said executor to attend personally to the same, I do hereby nominate and appoint my friend Chas. Esseltine, of Livingston, to act as my agent or the agent of my estate, in leasing the same and collecting the rents from time to time, and making sale of the same under the direction of my said executor; and for all moneys he shall collect as such agent, or in case of a sale to be approved of by my said executor, I direct my said executor to pay one per cent on all rents so collected, and a like per cent on such sale, as a compensation for such agency."

On the 14th day of September, 1854, the testator executed and published the following codicil to said will:

" Whereas doubts may arise in relation to the construction of the sixteenth section of the said will, now therefore, I do hereby declare, and it is my will, that upon the death of my wife the whole income of the general fund therein mentioned, except so much as shall be required for the payment of the annuities to my son Douglass and the widow of my son William, shall be reinvested and accumulate until my youngest grandchild mentioned in said will shall arrive at the age of twenty-one years. That from and after that event the whole income of said fund shall be equally divided between my said

grandchildren, until the death of my son Douglass and the widow of my son William; upon the death of both of them, the final division of my estate between my grandchildren shall be made."

On the 23d day of February, 1856, the testator executed and published this further codicil to his will:

" I authorize and empower my executor, in case of the marriage of either of my granddaughters before the time arrives for the division of my estate, to advance to such granddaughter out of the share to which she will be entitled out of my estate, such sum as she may require, in his discretion, not exceeding six thousand dollars.

I also authorize and empower my said executor, in case my grandson Russell shall, upon arriving at the age of twenty-one years, desire to engage in business, to advance to him on account of his share of my estate, such sums as he may think best, not exceeding ten thousand dollars.

I also direct that the annuity of one thousand dollars to my daughter-in-law, for which my will provides, be continued and paid to her during her natural life."

The present action was originally commenced by Douglass Forsyth against the executor, widow and heirs of the testator; and the plaintiff having subsequently died, the action was revived and continued in the name of the present plaintiffs, his administratrix and administrator

The complaint alleged that about October 28th, 1856, said Russell Forsyth, then a resident of the city of Albany, departed this life at the age of eighty-three years, leaving Sarah Forsyth his widow, and Douglass Forsyth, the plaintiff, his son, Emily Hone Forsyth, Sarah Forsyth, Russell Forsyth and William Forsyth, all under the age of twenty-one years; the youngest child being about nine years old at the time of the death of the testator; and children of his son William Forsyth, now deceased, by marriage with Cornelia Kane Forsyth, his only heirs at law and next of kin now living and interested in said will and the property of said testa-

tor, who are defendants herein ; and leaving a large real and personal estate, to wit, real estate of the value of about four hundred thousand dollars, and personal estate to the value of about one hundred thousand dollars. That said real estate consisted of improved property in the city of Buffalo, in property in Schoharie county, improved real estate in the city of Albany, consisting of stores and dwelling house, and other real estate, all in the state of New York. That about November 25th, 1856, said will and codicils were admitted to probate before the proper officer, in the county of Albany, and an inventory made of his said real and personal property, amounting to about the sum of $484,000, and duly filed in the proper office of said county. That John F. Rathbone, the executor and trustee named in said will, qualified as such, and by virtue of said will and premises took possession of all said property, except the six stores and dwelling house, and entered upon the execution of said trust. The plaintiff alleged that he was informed and believed that the first twelve sections of said will may be valid in the law, and the legacies therein contained, though he submitted the same to the court ; but that he was advised and believed that the accumulations directed in the 13th section of said will, of the surplus profits of the general fund beyond the yearly demands due to the wife of said testator, his son Douglass, the plaintiff, and his daughter-in-law, as modified and altered in and by the first codicil, are illegal and invalid, inasmuch as they accrue to the benefit of all the grandchildren of the testator, and are not confined to the youngest child of William, and that they are illegal and void. The plaintiff further alleged, that he was advised and believed, and so charged, that the disposition in the 16th section of said will, and in the first codicil, to all the grandchildren, of all and singular the residue of his estate of every kind, including the said surplus profits with the said accumulation as given therein, are illegal, inoperative and void, inasmuch as the same may bind up the residue and render it inalienable for seven lives at least, viz.

the lives of the widow of the testator, the said widow of William, the said Douglass, and the said four children of William, and also for the life of any other grandchildren who may be born and die in the meantime; and a trust results to the real and personal representatives in law of the testator, who are parties to this action, and who are entitled to have a conveyance thereof from the trustee and executor of said will, as well of the real as personal estate.

The plaintiff further alleges, that said John F. Rathbone, although he knows of the claims of the plaintiff, and of his rights and demands in the premises, as above set forth, claims that said will is in all respects legal and valid, and is proceeding to act in the execution of the trusts therein accordingly.

And the plaintiff alleges, that it is necessary and indispensable, and he demands that this court should settle the true construction of said will, and declare and decree what are the lawful trusts thereof and the rights thereto. And he demands judgment, that when the trusts are thus settled, and his rights in the premises established, the trustee convey and deliver to him whatever he may be decreed to be entitled to, as well under said will, as the lawful, real and personal representative of the testator, and that all necessary parties join in the conveyances; and that said plaintiff may have such other or further judgment or relief in the premises as shall seem fit to this court, together with the costs of the action.

The answer of John F. Rathbone, executor, &c. admits the making, execution and publication of said will and codicils by said Russell Forsyth, the decease of said Russell Forsyth leaving him surviving the plaintiff and the co-defendants, his only heirs at law and next of kin now living, and interested in said will, as in the complaint in that behalf is alleged; but denies that the testator left real estate of about the value of four hundred thousand dollars, or exceeding in value about one hundred thousand dollars. Admits that said

will and codicils were admitted to probate before the proper officer, and that an inventory was made and duly filed, as alleged in said complaint. Admits that he is the executor and trustee named in the will, that he qualified as such, and has entered upon the execution of the trusts, as alleged in the complaint. Defendant says that he is advised and believes that the said will and codicils are, in all respects, legal and valid, and denies that the same, or any part of the provisions therein contained, are illegal or invalid, or in any manner inoperative or void, and submits the same to the court.

The answer of all the other defendants admits the execution and proof of the will and codicils as alleged, but denies that said Russell Forsyth died seised or possessed of real estate of the value of four hundred thousand dollars; and submits to the court, and insists, that the provisions of said will are all valid and legal, and denies that any of its provisions are void and illegal, as alleged in the complaint.

The issue came on to be tried by the court, at a special term thereof, held at the city of New York on the 23d day of June, 1857, before his honor Justice ROOSEVELT. The only question of fact being the amount left by the testator at the time of his death of real and personal estate, it was admitted by the parties that the real estate was one hundred thousand dollars, and the personal property four hundred thousand dollars; whereupon the questions of law arising in the case were argued before the court by counsel for the respective parties, and the case submitted to said court for its decision.

The following opinion was delivered by the justice before whom the issue was tried:

ROOSEVELT, J. "The plaintiff, who is son of the late Russell Forsyth of the city of Albany, has instituted the present suit to set aside the material provisions of his father's will, on the ground of their illegal non-conformity to the

rules of law regulating the power of testators to fetter their estates after their decease.

At the time his father's will was made, (I mention the circumstance as throwing some light on its seemingly unequal provisions,) the plaintiff was, and for nearly forty years had continued to be, as he still is, a childless bachelor. His father also, without explanation, seems to have assumed it as a settled fact that the plaintiff, although certainly not too old to change, never would marry. For while he carefully provides for the widow and children then living of the plaintiff's deceased brother, he makes no allusion to any possible wife, widow or children of the plaintiff himself—an omission still more significant, when viewed in connection with the following language:

· "*Fifthly.* In regard to my son Douglass Forsyth, I desire to make ample provision for his support out of my estate. I do therefore give to my son Douglass, yearly, the sum of three thousand dollars during his natural life; and I direct my executor to pay said sum yearly, in quarterly payments, &c.; and I desire that my son Douglass shall live with my said wife, and be a member of her family, so long as she shall continue housekeeping."

The plaintiff, although still a bachelor, and without averring the slightest probability, or intention, of ever becoming a parent, complains of the preference shown to his deceased brother's children, who were actually born and in being, and for that reason, but not on that ground, seeks to defeat his father's testamentary intentions.

Personal property, it is conceded, may be tied up by will, for two existing lives, and its income for two, or more, existing minorities. A parent, for instance, may place his stocks and mortgages in the hands of a trustee, for the benefit of his married daughter during her life, and of her husband, after her death, with directions, on the death of both, to transfer the securities to such of their children *as may then be living*—a contingency which, as it cannot be determined

till both are dead, necessarily leaves the ownership uncertain, and of course the power of absolute disposition suspended, during their two lives.

Or in case of a minor child, otherwise well provided for, he may direct that the income given to him shall be accumulated for his benefit; in other words, that neither he nor his guardian for him shall spend it, or have the power of doing so, till he arrives of age. But all attempts by testators, except in one instance of real estate, to exercise a *post mortem* control over their worldly goods beyond those limits, are illegal and void. And the question is, Does the will before us sin in this particular ?

Russell Forsyth, the father, died in Albany on the 28th October, 1856, possessed of an estate, mainly personal, valued at half a million of dollars, and leaving, as already stated, a widow, one son, the plaintiff, unmarried, and about forty years old, and four children of a deceased son, all minors.

No dispute exists as to the capacity of the testator, or his due execution of the instrument. The only point presented relates to his intentions, and their alleged inconsistency with the rules of law.

The leading object of the testator appears to have been to provide a "liberal support, for life, for his widow and surviving son, and the widow of his deceased son, and subject to those charges or annuities, to give the whole estate to the grandchildren in fee." Such a disposition, although seemingly harsh toward his only surviving son, of itself would be clearly valid.

It is insisted, however, on his part, and these are made the only grounds of his complaint, first, that the accumulations directed in the 13th (meaning 14th) sections, of the surplus income, for the benefit of all the grandchildren, possible as well as actual, instead of the youngest one living, were for that reason illegal and void; and secondly, that the disposition in the 16th section (as modified by the codicil) in favor of all the grandchildren, of the whole residuary estate, including

the supposed illegal accumulations, "may bind up the residue, and render it inalienable for seven lives at least, and also for the life of any other grandchildren who may be born and die in the meantime," and for that reason is illegal and void.

The law, to a certain extent, permits testamentary accumulations. They can be directed "for the benefit of one or more minors," but the minors must be "in being at the death of the testator," and the accumulations "must terminate at the expiration of their minority." (1 *R. S.* 726, 774.) In the present case the accumulations were directed to "be added to the general fund," and that general fund, subject to the annuities, was afterwards given "to all my (the testator's) grandchildren, share and share alike." They were, therefore, in the language of the statute, to be made for the benefit of "one or more minors," even if grandchildren afterwards to be born, should be considered as included in the bequest. Such after-born grandchildren, however, would, of course, not be minors "in being at the testator's death."

But the whole tenor of the will shows that the testator did not contemplate any other grandchildren than the then born "children of his son William," whose death he lamented as "a grievous loss," and for the support of whose widow, and "the support, education, and maintenance of whose four surviving children," he expressed himself so "desirous of making ample provision." It is obvious, also, from the composition of the instrument, and the name of one of the attesting witnesses, that it was worded with distinguished professional skill, by a draftsman who knew the law, and knew that accumulations must be confined to minors *in being.*

Both testator and counsel, for some reason unexplained, assumed that the bachelor son of forty would have no children, and that the children of his deceased brother would be the legal and natural representatives of their surviving uncle, as well as of their deceased father and grandfather. When, therefore, the will speaks of "all my grandchildren," it ob-

viously means "all the children of my son William;" the property to be divided equally, as distinguished from any partial distribution among them.   The testator intended not only that they alone were to be the distributees, but that they were to be so, "all equally, share and share alike."

Besides, were the meaning otherwise ambiguous, the law would require the court to give to the language that interpretation which would render the provision valid, and not void; illegal intention is not to be presumed, but proved. Presumption, if resorted to at all, is in favor of innocence. If, then, to provide for accumulation to benefit unborn, possible grandchildren, would be an illegal direction, we are not to presume that the testator, by the terms "my youngest grandchild mentioned in said will," intended a person different from one of the four children of William actually mentioned, and in being—a person, who, probably, perhaps certainly, never would come into being—a person different from "the youngest child of my son William," (see § 12,) the time of whose "attaining the full age of twenty-one years" was to be the period of division, and who, in the will, was indiscriminately called the youngest of William's children, and "the youngest of my said grandchildren."

The result, then, is that by the 16th section of his will, the testator gives the whole "general fund" of his estate to the four "grandchildren" mentioned "by him in the will, and described as the children of his deceased son William, subject to the three annuities of $5,000, $3,000, and $1,000." That this devise vested absolutely, in interest, "in the said grandchildren" on the day of the testator's death, and carried with it, as incident to the capital, an immediate right to the whole surplus income as it accrued, to be paid to the guardians of the minors, and to be accumulated by them for the benefit of their wards.

That the effect of the codicil, expressly directing accumulation, was merely to substitute, in this respect, the executor for the guardian, and to continue, as to the older grandchil-

dren, the accumulation of their income until the youngest should arrive at the age of twenty-one years.

That as the statute allows an accumulation for the benefit of more than one minor to " terminate at the expiration of their minority," (§ 3,) the accumulation seemingly may continue till all are of age; but if not, and if the provision in the codicil should be construed as directing " an accumulation for a longer term than the minority of the persons intended to be benefited thereby," the consequence would be, " not that the ' direction' would be void wholly," but " void only as respects the time beyond such minority," (§ 4,) leaving the rest to stand, and leaving to the adults, as they come of age, the right to take their respective shares, discharged from the void part of the direction, and to dispose of them at their own pleasure, without restraint, and without the intervention of a trust.

That provision for the payment of annuities out of the interest and dividends of personal property, if the beneficiaries are actually in being, and not to be born, creates no suspension of the power of alienation. Such annuities are in the nature of trust mortgages, payable by installments, and may be released or sold for the sum in gross, and the capital may at any time be disposed of with the consent of the annuitants.

That, although a direction to accumulate income may create, as it does, a partial suspension of the power of alienation, it does not, on that ground, come within the general laws of suspension, but is regulated by the special enactment in section 4, above cited, in relation to accumulations.

A decree should be entered, dismissing the complaint, without costs, unless the parties should desire the insertion of special direction, in which case they will prepare a draft and submit it for settlement."

The court accordingly rendered its decision, adjudging the will to be, in all respects, legal and valid, and dismissing the complaint without costs.

The plaintiff appealed to the general term.

Forsyth *v.* Bathbone.

*Alexander W. Bradford,* for the plaintiff.

*John H. Reynolds,* for the defendants.

*By the Court,* SUTHERLAND, J.   The testator *directs* his executor to sell all his real estate, not specifically devised to his widow, or grandchildren; and therefore all his real estate, except that so specifically devised, is to be considered as converted into money from the time of the testator's death. (*Stagg* v. *Jackson,* 1 *N. Y. Rep.* 206.)

The proceeds of the sale of the real estate is to go towards forming the general fund belonging to his estate, spoken of by the testator; and into the same fund, to increase it, is to go all his stock and property of every description, not specifically devised.

The testator gives several pecuniary legacies to different relatives; an annuity of $5000 to his widow; an annuity of $3000 to his son Douglass; and upon the majority of the youngest child of his deceased son William, he gives the widow of William, in lieu of the rent of the stores in Albany, specifically devised to his grandchildren, the children of his son William, an annuity of $1000. These annuities are to be paid by the executor out of the general fund.

The whole estate of the testator, other than that portion of it specifically devised, after the payment of the sundry small legacies to his relatives, is to constitute the general fund out of which the annuities are to be paid.

By the sixteenth section of the will the testator, after the death of his wife, directs his executor to set apart from the general fund sufficient of the best and most reliable securities, from the annual profits of which, the annuities to Douglass and the widow of William are to be paid. He then devises and bequeaths all the rest, residue and remainder of his estate, not otherwise devised or disposed of, by his will, "to all his grandchildren, share and share alike." The testator then repeats the same devise, in effect, in these words:

" And after the decease of my son Douglass and of my said daughter-in-law, all the rest, residue and remainder of my estate, whether real or personal, I give, devise and bequeath the same to all my grandchildren, to be equally divided between them, share and share alike."

After looking carefully at the whole will, and the conceded facts in the case I think the testator meant, by " all my grandchildren," the four children of his deceased son William, who survived the testator.

The devise or bequest by the sixteenth section of the will, to the grandchildren, though in form a future devise or bequest, " after the death of my wife," and " after the decease of my son Douglass and of my said daughter-in-law," is in effect a present devise or bequest; and by it the four grandchildren of the testator, on his death, took equal *vested* interests. ( *Vanderheyden* v. *Crandall,* 2 *Denio* 19, *and authorities cited. Fearne's Con. Rem.* 368, *&c.*)

The sixteenth section of the will is, substantially and in effect, a bequest of the whole general fund contemplated by, and to be constructed under, the will, to the four grandchildren, in equal shares, subject to the annuities, and to the trusts and guardian care created by the will, and vested in the executor in and over the fund.

If one of the grandchildren had died the next day after the testator, intestate, his or her share, or interest, would have gone to his or her next of kin, by the law of distribution, and not under any limitation or provision of the will; for there is no limitation or provision which could have carried it.

It would appear from the fourteenth section of the will, the desire therein expressed that the executor should not hasten the sales of the real estate, and the direction for the reinvestment of the surplus income therein given, without reference to the codicils, that the testator probably intended that the division of the fund among his grandchildren should be postponed until after the death of his wife, of his son

Douglass, and of the widow of his son William. But, whatever might have been the construction of the will, as to this point, had there been no codicil, by the first codicil the testator, assuming that his wife would not survive either his son Douglass or William's widow, expressly declares that "*upon the death of both of them*," the final division of his estate between his grandchildren shall be made.

From the whole will, including *both* codicils, (for the second codicil points forcibly to the same intention,) I think it plain that the testator intended that the final division of the general fund, out of which the annuities were to be paid, should be postponed until after the death of the three annuitants.

But this mere postponement of the division or *possession* of the fund itself did not, and could not, prevent the grandchildren's interest in that fund, or their right to such future division and possession, from vesting absolutely in them on the death of the testator; and if such interest, or right, so vested, why can they not, as they severally attain their majority, absolutely alienate or dispose of such interest or right ?

If the postponement of the final division, or possession of the fund itself, contemplated by the testator, is forbidden by any law against perpetuities, such unlawful postponement cannot impair or affect the absolute bequest of the fund to the grandchildren; but the court should hasten the division; so that the grandchildren, as they severally attained their majority, would take his or her share of so much of the general fund as should not be wanted for the annuities; and as the annuitants severally died, so much of the fund as had been required for his or her annuity would be released for a division among the grandchildren.

It is perfectly plain to me that the will creates a trust. The executor took, as executor, all the personal property, except that specifically bequeathed. The testator directs the executor sooner or later to sell all his real estate, except that specifically devised. The whole estate then, except that spe-

cifically devised or bequeathed, is to be considered, in the hands of the executor, as money or personal property. His office as executor, and the duties imposed upon him by the will as such—in providing for and paying the annuities; in reinvesting the surplus income, until the youngest grandchild should arrive at the age of twenty-one; and after that, in paying the whole income, except so much as should be required to pay the annuities, to the grandchildren, until the final division of the fund; and in making such division—necessarily call for, and imply, a trust in the executor; and show that the testator intended that the executor should have the custody and management, and legal title, of the fund, until the final division; and that he should keep it together until such final division.

Being a trust of money or personal property only, and not for any illegal purpose, unless perhaps an unlawful accumulation of interest or income, the trust is not affected by the provisions of the revised statutes abolishing trusts except certain express trusts, which apply only to real estate, and is valid for all purposes except such unlawful accumulation. But, although valid, I do not see how it can render the vested beneficial interests of the grandchildren inalienable; or has any bearing on the question of perpetuity. Section 63 of the article of the revised statutes concerning uses and trusts, making the interest of a person beneficially interested in a trust for the receipt of the rents and profits of lands, inalienable, (1 R. S. 730,) applies only to the interest of a person beneficially interested in a trust for the receipt of the rents and profits of lands, and not to the interest of a person beneficially interested in a trust for the receipt of the interest or income of money or personal property. None of the provisions of that article apply to personal property. (Kane v. Gott, 24 Wend. 661. Savage v. Burnham, 17 N. Y. Rep. 571.)

By section 1 of the title of the revised statutes concerning the accumulations of personal property, and of expectant estates in such property, the absolute ownership of personal

Forsyth *v.* Rathbone.

property shall not be suspended by any limitation or condition whatever, for a longer period than during two lives in being, &c. And section 2 declares that limitations of future or contingent interests in personal property shall be subject to the rules prescribed in relation to future estates in land.

The interests of the grandchildren in the general fund, or the income thereof, given to them by this will, are not future, or contingent, but present and vested.

It would appear that the absolute ownership of personal property can only be suspended by means of a contingent limitation of a future estate or interest. There is no contingent limitation of any future estate or interest, by this will. There is an unlawful accumulation of interest or income intended and directed by the will. The testator directs the surplus interest or income to be accumulated for the benefit of all the grandchildren, until the youngest attains his or her majority. Such accumulation, if fully carried out, would not be for the benefit of minors, exclusively. The direction is therefore void, so far as it directs an accumulation for the benefit of any of the grandchildren, after they have attained their majority.

But this direction for an unlawful accumulation does not affect the validity of the bequest of the fund, or of its surplus income, to the grandchildren. As the grandchildren severally attain their majority they will be entitled to their share of the surplus income, notwithstanding the direction for accumulation.

My conclusion is that the whole will is valid, except this direction for accumulation for the benefit of grandchildren after they have attained their majority; and that the judgment of the special term should be affirmed in all respects except in adjudging *all* the provisions of the will to be valid.

[NEW YORK GENERAL TERM, October 9, 1860. *Sutherland, Bonncy* and *Leonard,* Justices.]