Freeman agt. Smith *et al.*

---

# SUPREME COURT.

NATHANIEL M. FREEMAN, as trustee, &c., agt. ALBERT R. SMITH *et al.*

*Will — Effect of a devise of real estate to wife for life, and direction that upon her death it be sold and distributed among his children or their legal representatives — Who to be included in the distribution.*

Where the testator devised real estate to his wife for life, and directed that upon her death it should be sold and the proceeds distributed among his three children or their legal representatives, the interest vested in each of them as personal estate, and the share of a daughter who died before and that of a son who died after the widow, passed to their next of kin, so that, although it is plain the testator had no intention the children of the half blood should receive any portion of his estate, they must be included in the distribution.

*Special Term, January*, 1881.

BEACH, *J.* — The testator devised his real estate to his wife for life, and at her decease directed a sale by the executors and the investment of a sufficient portion of the proceeds to produce four dollars a week for his daughter Seraphina, the balance to be divided between his other children, Josephine, Albert and Jerome, " or their or either of their legal- representatives, him, her or them surviving." After the death of the daughter the disposition of the fund invested for her benefit was in the same words. The testator's wife had three children by a former husband. The daughter Josephine died intestate and without issue before, and the son Jerome after the widow. The principal question relates to the disposition of the surplus at present existing after the investment for the benefit of Seraphina, and an expression of opinion by the court is requested to guide the trustee in his action after her death.

It is clear that the widow took a life estate in the realty, and the children named a vested interest in the proceeds of the sale after her death. It is evident from the clause the testator intended the benefit given to each child for his or her legal representatives, and the additional words do not modify that design, but were apparently added by the scrivener as usual legal phraseology, which were inapplicable and meaningless. The bequest over to the children was a gift of personalty, because the division was not to be made until after the realty was sold under the power conferred upon the executors. Real estate .directed. by a will to be converted into money and the proceeds applied as directed is, in equity, regarded as personal property (*Bramhall* agt. *Ferris,* 14 *N. Y. R.,* 41 ; *Teed* agt. *Morton,* 60 *N. Y. R.,* 507 ; *Moncrief* agt. *Ross,* 50 *N. Y. R.,* 431; *Forsyth* agt. *Rathbone,* 34 *Barb.,* 388 ; *Johnson* agt. *Bennett,* 39 *id.,* 237 ; *Irish* agt. *Huested, id.,* 413).

The equitable conversion does not take place. until the time arrives when, under the direction in that behalf, the sale should be had. Whatever vested interest may pass by the death of a distributee prior to that period, even if in realty,. is subject to be divested by the coming of that time. Therefore,

if by the death of Josephine before the widow such an interest went to her heirs, it has been divested by the death of the widow and the equitable conversion happening upon that occurrence. The only conclusion which could affect parties here would be that the interest of Josephine passed to her heirs as realty unaffected by the direction for a sale and division, because in such case the relatives of the half blood would not take under the statute, not being of the blood of the ancestor. Such a view, however, cannot be sustained. Under the provision ordering a sale on the death of the widow and distribution of the proceeds among the three children of the testator, or their legal reprsentatives, the interest vested in each of them as personal estate, and the shares of the one who died before and that of the one who died after the widow, passed to their next of kin (*Harris* agt. *Slaght*, 46 *Barb.*, 470; *Meakings* agt. *Cranwell*, 5 *N. Y. R.*, 136; *Ross, adm'r, &c.* agt. *Roberts*, 9 *Sup. Ct. R.*, 90; *Lieper* agt. *Thansan*, 10 *P. F. Smith*, 177; *McClure's Appeal*, 22 *id.*, 414; *Fairly* agt. *Kline, Pennington*, 754; *Reading* agt. *Blackwell, Baldwin*, 166; *Rinehart* agt. *Harrison's Ex'rs, id.*, 177; *Loftis* agt. *Grant*, 15 *Arkansas*, 680; *Brothers* agt. *Cartwright*, 2 *Jones' Equity*, 113; *Homers' Appeal*, 6 *P. F. Smith*, 405). It follows from this principle that the share of Josephine must be distributed to her next of kin, including those of the half blood. This seems to be a clear legal result from the will, and in such case no embarrassment should arise from speculations regarding the testators intentions, however useful, where ambiguity exists. The portion of the son who died after the widow, intestate and without issue, will take a like course, as will also the invested fund upon the death of Seraphina. Under some circumstances there would be much force in the suggestion that it is plain from the will the testator had no intention the children of the half blood should receive any portion of his estate. That may well be so, but it affords no reason why legal results founded upon a long series of adjudications should be disregarded in order that a testamentary dis-

position should flow in a channel different from one the law makes from wording free of doubt.

A decree is directed in conformity herewith, with costs from the fund.