JOHN W. MASON & others *vs.* SILAS H. POMEROY & others.

Berkshire.    September 11, 1889. — February 27, 1890.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Trust Estate — Continuation of Business — Liability of Trustees —*
*Creditor's Bill.*

Three trustees were empowered to contract necessary debts in carrying on a manu-
facturing business, were not to be liable for losses not involving bad faith,
and at the end of the trust, before transferring the estate, were to be indemni-
fied against any personal liability assumed in properly executing the trust.
Two of them, by agreement, withdrew from the active management of the
business, and the third trustee continued to carry it on alone. When the time
came to end the trust, there existed a large indebtedness incurred in good faith,
partly by the three trustees, and partly later by the third trustee alone. A
creditor of the latter class brought a bill in equity for himself and like creditors,
to reach and apply the trust property, and especially the three trustees' right to
indemnity, in payment of their claims. The two trustees who had withdrawn
from the active management of the business demurred for want of equity, and
because the sole remedy was at law, because no judgment had been recovered,
and because one creditor could not sue for all. *Held*, that the demurrer was
properly overruled.

The agreement whereby the two trustees withdrew from actively managing the
business was made pending an equity suit instituted by them to regulate the
trust, in which a decree was made directing the third trustee to devote the pro-
ceeds of certain property of the estate towards paying the debt of one of the
earlier creditors, any balance then due thereon to be determined and secured by
a mortgage on the trust estate. He disobeyed the decree, whereupon a new
decree was made directing him to use the avails of other property of the estate
towards paying the debt, and he did so, but the balance remaining due thereon
was never determined nor the mortgage given. On the bill brought for the
later creditors, no default was shown on the third trustee's part, nor loss to the
estate through him. *Held*, that the plaintiff's rights were not cut down by any
equity existing in favor of the trust estate against the third trustee; that the
earlier creditors were not entitled to priority over the later; and that the bill
could be maintained.

Certain claims for the services and disbursements of counsel in both suits, and in
the administration of the trust generally, and for the services of a guardian *ad*
*litem* in the first suit, were made before a master to whom the case was referred,
and were specially reported upon by him. *Held*, that such claims should be
allowed.

BILL IN EQUITY, filed December 5, 1887, against Silas H.
Pomeroy, Charles Atwater, and William Turnbull, individually
and as trustees under the will of Theodore Pomeroy, and against

Theodore L. Pomeroy, by the first named plaintiff and others doing business under the firm name of Samuel Thompson's Nephew & Co., in behalf of themselves and other similar creditors of the trust estate, to reach and apply such estate in payment of their debts.  The case was referred to a master, who allowed the claims of the plaintiffs, and of many other creditors of the estate, and reported specially upon certain other claims made before him.  Hearing before *C. Allen*, J., who reserved the case, upon the pleadings and the master's report, for the consideration of the full court.  The facts appear in the opinion.

*M. Wilcox*, for the plaintiffs.

*T. P. Pingree*, for Atwater and Turnbull.

C. ALLEN, J.  The late Theodore Pomeroy devised his mills and manufacturing property to three trustees, in trust, to continue and carry on his manufacturing business until his son, Theodore L. Pomeroy, should arrive at the age of twenty-one years.  They were to provide for the outstanding and current liabilities, and to incur on account of said trust estate, during the continuance of the trust, such further liabilities as a wise and prudent management might require, and when his said son should become twenty-one years of age to convey the property to the testator's two sons, Silas H. and Theodore L., or in case either one of them should decline to continue in business with the other, then to convey the same to the other upon his paying certain sums to the son who should withdraw; with certain other provisions relating to the termination of the trust not necessary to be recited here.  The will further provided, that the trustees should be entitled to a fair and reasonable compensation, and that they should not be liable for any loss to the trust estate which did not involve bad faith on their part, and that at the termination of the trust, and before any transfer or conveyance, they should be fully indemnified against any then existing personal liability incurred in the proper execution of the trust.

The three trustees accepted the trust, and carried on the business together till May, 1885, when, in consequence of disagreements which had arisen among them, it was arranged that thenceforth the business should be carried on by Silas H. Pomeroy, one of the trustees; and this was done under the circum-

stances which are detailed in the master's report. The son, Theodore L., became twenty-one years of age on November 13, 1887, and the time had thus come for the termination of the trust. A large amount of indebtedness was then existing, some of which was incurred by the three trustees while carrying on the business together, and some by Silas H. Pomeroy while carrying on the business alone. A partnership firm belonging to the latter class of creditors brought the present suit in behalf of themselves and of other similar creditors, averring that the trustees refused to pay their said debts, and that neither of them had property open to attachment or execution, and seeking to establish and enforce an equitable right to have their claims paid out of the trust property, and especially to have enforced in their favor the right of the trustees for re-imbursement and indemnity out of the trust fund before its distribution.

The principal questions in the case are raised by the two trustees, Atwater and Turnbull, who withdrew from the active management of the business in 1885, and they contend that the creditors whose debts accrued under the joint management are entitled to a priority over the later creditors, and, indeed, that the present bill cannot be maintained at all by the latter. In support of their demurrer, they rely upon the following prop-ositions: 1. That the plaintiffs have no equity, because they do not offer in the bill to make good to the trust fund the losses and defaults occasioned by the acts of the trustee Silas H. Pomeroy, with whom they contracted, and that their right to the trust fund must be limited by his right to indemnity from that fund. 2. That the plaintiffs' sole remedy is at law. 3. That there has been no previous recovery of judgment by the plain-tiffs. 4. That there is no community of interest between the plaintiffs, and that one creditor cannot sue in behalf of all.

The most of these objections are answered by a brief consid-eration of the nature of the bill. It is in its essential char-acter a bill seeking to enforce the proper execution of a trust, which is ready to be terminated, and in which nothing remains to be done but to transfer the trust property in accordance with the equitable rights of the various parties who assert conflicting claims thereto. It is, indeed, difficult to see how this object

can be accomplished in any other way than by a suit in equity. The plaintiffs claim equitable rights in the premises. Their position as creditors entitles them to assert such rights, and to seek the determination of the court whether, on the particular facts of the case, their rights should be sustained. That is to say, where trustees who are authorized to carry on a business contract debts, they are not only liable personally for the payment of them, but the creditors may also resort to the trust fund, subject, however, to the rules of equity, as applicable to the facts and circumstances which may exist in any particular case. *Ex parte Garland*, 10 Ves. 110. *Ex parte Richardson*, 3 Madd. 138. *Owen* v. *Delamere*, L. R. 15 Eq. 134. *Cutbush* v. *Cutbush*, 1 Beav. 184. *Thompson* v. *Andrews*, 1 Myl. & K. 116. *Burwell* v. *Mandeville*, 2 How. 560. *Smith* v. *Ayer*, 101 U. S. 320, 330. *Jones* v. *Walker*, 103 U. S. 444. *Pitkin* v. *Pitkin*, 7 Conn. 307. Lewin on Trusts, (7th ed.) 217. It is indeed contended on the part of the plaintiffs, that their right to resort to the trust property is a primary and original right, which exists independently of any right on the part of the trustee to be indemnified. *Wylly* v. *Collins,* 9 Ga. 223. The view, however, which has prevailed in England, so far as the question has been discussed, is that the creditors may reach the trust property when the trustees are entitled to be indemnified therefrom, and that the creditors reach it by being substituted for the trustees, and standing in their place. *In re Johnson*, 15 Ch. D. 548. *Dowse* v. *Gorton*, 40 Ch. D. 536. It is with reference to this doctrine that the defendants contend that the plaintiffs ought to offer in their bill to make good to the trust fund the losses and defaults occasioned by the acts of Silas H. Pomeroy. But this ground is untenable on the demurrer, because, assuming for the present this doctrine to be correct, and taking the plaintiffs' case upon the lowest ground, the bill sets out the right of the trustees to be indemnified against personal liability incurred in the proper execution of the trust, the existence of such liability to the plaintiffs and others, and the equitable right of the plaintiffs and others to have enforced in their favor for the payment of their claims the rights of the trustees for reimbursement and indemnity; and it asserts a right to have their claims paid out of the trust prop-

erty and estate in full, or, if such property and estate are insuffi-
cient, then to have their claims paid in *pro rata* proportions;
and prays that the trustees be held and ordered to account for
the trust property, and that an account of the creditors may
also be taken, and the equitable interest of Silas H. Pomeroy in
the trust estate may be sold and disposed of, and the proceeds
applied in payment of the plaintiffs and others.   There is no
occasion for any distinct offer on the part of the plaintiffs to
make good any possible losses to the trust estate arising from
his misconduct, if any such there were, since they would only
succeed to such rights as he might be found to have.   There is
no suggestion in the bill of any misconduct or default on his
part; but if there were, and if the plaintiffs have no higher
right than simply to stand in his place, the bill need not contain
any such offer to make good losses in order to entitle the plain-
tiffs to reach whatever upon an account may be found to remain
as a fund from which he would be entitled to be indemnified.
The result of such an accounting cannot be anticipated on a
demurrer.   If it should prove finally that there was nothing to
which he was entitled, then the plaintiffs would fail on the
merits, unless they should succeed in maintaining their case
upon some ground independent of being substituted to the
equity of the trustee who contracted the debt to them.

It is not necessary that the plaintiffs who institute such a
suit should first have recovered judgment on their claims, or
even that their claim should be yet due.   *Whitmore* v. *Oxborrow*,
2 Yo. & Col. Ch. 13.   1 Story, Eq. Jur. § 547.   And the usual
way is for one creditor to sue in behalf of all.   Story, Eq. Pl.
§ 99.   *Egberts* v. *Wood*, 3 Paige, 517, 520.   *Hallett* v. *Hallett*,
2 Paige, 15.   *Chapman* v. *Banker & Tradesman Publishing Co.*
128 Mass. 478.   *Thompson* v. *Dunn*, L. R. 5 Ch. 573.

We can have no doubt, therefore, that the demurrer to the
bill should be overruled.   The demurrer was contained in the
answer, and there appears to have been no formal order by a
single justice overruling it; but the case was referred to a mas-
ter, who has made a report, which was apparently designed to
present all the material facts involved in the issues raised by
the pleadings.   No objections or exceptions were taken to the
report, and, when the case came on to be heard before a single

justice, it was, upon the request of both parties, reserved for
the determination of the full court upon the pleadings and the
master's report.    The more important questions which have
been argued upon the merits are two:   1. Whether the rights
of the plaintiffs are qualified by any equity which exists in favor
of the trust estate against Silas H. Pomeroy.    2. Whether the
earlier creditors are entitled to have a priority over the later
ones.

In reference to the first of these questions there is nothing in
the facts stated in the master's report which shows that there is
any equity existing in favor of the trust estate against Silas H.
Pomeroy, so that we have no occasion to consider the question
whether, as a general rule of equity, the rights of the plaintiffs
would be qualified thereby in case it should be found that he was
himself subject to any such equity.    Mention has already been
made of the provision in the will, that the trustees shall be en-
titled to a fair and reasonable compensation for their services
in administering the trust, and shall not be liable to any loss to
the trust estate which does not involve bad faith on their part.
Assuming that the doctrine of the recent English cases above
cited (*In re Johnson* and *Dowse* v. *Gorton*) is applicable to the
present case, we find nothing to show that Silas H. Pomeroy is
indebted to the trust estate, or that he has caused any loss to
the same for which he is responsible under the terms of the will.
There has been no formal accounting, and the material facts,
briefly stated, upon which this question depends, are as follows.
Until May, 1885, the trustees carried on the business together.
While so carrying it on disagreements arose, and the other two
trustees brought a bill in equity in this court, on April 11, 1885,
against Silas H. Pomeroy and the other parties in interest, un-
der the statute giving jurisdiction in equity to regulate the ex-
ecution of trusts.   On May 18, 1885, an agreement was made,
whereby Silas H. Pomeroy was to take charge of the mills and
property and carry on the business, and pay over to Turnbull,
who was one of the other trustees, and whose firm was also a
large creditor of the three trustees, the net avails over and above
the cost of manufacture of the goods manufactured and sold by
him ; and he was also to give to the two other trustees an agree-
ment, with acceptable surety, indemnifying them against any

liability, debt, or obligation created by his acts, and also secur-
ing the payment above provided for to Turnbull. No restric-
tion was put upon his power to contract debts in carrying on the
business. Such agreement with surety was given, and Pomeroy
took possession of the mills and property, and proceeded with
the manufacturing business under the same name as before. On
June 1, 1886, a decree was made in the suit in equity, denying
a motion for a receiver, and prescribing the manner in which
Pomeroy should thereafter conduct the business. He was to pro-
ceed with the manufacture of the wool and raw material then
on hand, and turn over the net avails of the goods to Turnbull
and Company; his right to purchase new material was limited.
After all the stock should be manufactured, he was to be at lib-
erty to continue the business as trustee under the will. As soon
as he had manufactured the material on hand, and the goods had
been sold and the proceeds applied as above provided, then the
balance, if any, due to Turnbull and Company was to be deter-
mined by reference to a master, if the parties did not agree, and
a mortgage upon the trust property was to be given to secure
such balance, and thereupon the two other trustees were to be
discharged as trustees. The business was to be so conducted
as to create no liability upon the two other trustees, and there
were certain other subordinate provisions. Pomeroy failed in
certain particulars to conform to the above decree, and on June
4, 1887, a new decree was entered, reciting that he had dis-
obeyed the order of the court in that he had failed to turn over
to Turnbull and Company the net proceeds of the goods, and
had intermingled the material and goods until their identity had
been lost, and had used the proceeds for carrying on the general
business of manufacturing, and that he had thus failed to apply
$40,000; and it was thereupon ordered that all the wool and raw
material then on hand should be devoted and set apart to raise
$40,000, to be applied as directed in the former decree. The
decree further provided, that the business of manufacturing
should be continued, and that additional necessary material
might be purchased from time to time, not exceeding $100,000,
and added to and mixed with the stock on hand. From the
proceeds of such manufacture, after deducting the cost of such
additional property and expenses, the sum of $40,000 and inter-

est was to be paid to Turnbull and Company, or to creditors of the three trustees.   There were other provisions not necessary to be stated here.

The master finds that it was admitted that the provisions above mentioned have been substantially fulfilled.   The new decree, in the particulars above mentioned, was a substitute for the former decree.   If while the first decree was in force he exceeded what was therein prescribed in respect to the purchase of goods, that transgression was cured by the appropriation of the property so purchased under the new decree.   The goods so purchased went into the trust property, and thus went for the benefit of the other trustees in raising the $40,000.   The master expressly finds that the goods became a part of the trust property, and that they were suitable and necessary therefor. Whether the purchase was or was not in accordance with the first decree, the second decree dealt with the question of any failure in that respect, and it has been complied with; so that it is not now to be alleged against Pomeroy that he failed to comply with the terms of the first decree in respect to the purchase of goods.

There were certain other particulars in the decree of June 1, 1886, respecting which nothing has yet been done; namely, the indebtedness of the trust estate to Turnbull and Company has not been determined, and no mortgage to secure the same has been given.   With reference to these, the first step to be taken was to determine the amount of indebtedness by reference to a master, if the parties did not agree; and if this has not been done, there is nothing to show that the omission has been through any fault of Pomeroy.   It was a matter between the three trustees on the one side, and Turnbull and Company on the other, Turnbull himself being on both sides.

There has been no accounting in which Pomeroy has been found to be in default, as in the case of *In re Johnson*, before cited; and there is nowhere in the master's report any finding that there has been any loss to the trust estate through any fault of his; much less, that there has been any loss which involved bad faith on his part.   We are therefore unable to see that he is in any manner indebted to the trust estate, or that there is any equity existing against him to prevent him from

being indemnified out of the trust estate for personal liabilities assumed by him in the conduct of the business.

Nor do we see any good reason for giving to the first class of creditors, whose debts accrued while the three trustees were carrying on the business, a priority over the later creditors, whose debts accrued during the management of Pomeroy. The business during the whole time was the business contemplated in the will. There was no change of trustees. By an arrangement among themselves, which was sanctioned by this court, one of the trustees assumed the direct management of the business; but there was no separation of the property, no inventory, no accounting, and no withdrawal or discharge of any of the trustees. The trustees who retired from the active management made an arrangement with their associate which was then deemed sufficient for their protection. Pomeroy's failure in the first instance to conform to the directions of the first decree of the court was made good by what he did under the second decree. The master finds that he incurred debts and liabilities for and on account of the business, for goods and materials used in and made part and parcel of the trust property, and such goods and materials were suitable and necessary for the manufacturing business as conducted by him, and for payment of them the creditors relied on the credit of the trust property, as well as on his personal credit; and these are the debts due to the plaintiffs and those in whose behalf this suit is prosecuted. The trust is now ready to be closed. It is found that these two classes of creditors exist; the first class to the amount of about $91,000, and the second class to the amount of about $51,000, besides a few others which are to be dealt with specially. They have all furnished materials and supplies for the trust property, and it may prove that the trust property now remaining is insufficient to pay them all in full. Why should one class of creditors be preferred to another? There is nothing in the statutes and nothing in the provisions of the will directly applicable to such a case. It is suggested that, under the decree made in June, 1886, it was contemplated that a mortgage upon the trust property should be given, which should enure to the benefit of the first class of creditors. But such mortgage was to be given while the concern was a going concern; it has never been given,

and the time has never come for it to be given. There was first to be a determination of the amount due by a reference to a master, and this has never been done. The business is now no longer to be carried on under the trust, but the trust is to be wound up, and, in view of the question in controversy, it is to be treated as if the trust property were insufficient to pay the debts in full. Ordinarily, under the insolvent laws, an agreement by a debtor to give to his creditor a mortgage in the future will not protect the mortgage when given from being set aside as a preference. *Copeland* v. *Barnes*, 147 Mass. 388, 390, and cases there cited. The steps were not seasonably taken to procure the mortgage, and it is now too late. New equities have arisen. If the mortgage had actually been given, creditors would have been bound to take notice of it. Under the decree, it was not certain whether there would be any balance of indebtedness to be secured by the mortgage, or whether any mortgage would be given. The decree contemplated a security to be given in the future, in case it should be determined that there remained any indebtedness to secure. But now the whole business is stopped, and creditors must accept the situation as it is. The later creditors have contributed to increase the trust property, and it would not be equitable or just to appropriate the whole trust property to the payment of the earlier creditors in full, leaving the later creditors to the chance of what might remain.

The provision in the decree of June 1, 1886, that the business be so conducted in the future as to create no liability upon the two withdrawing trustees, and that they should not be liable for any debt incurred by Pomeroy in doing the business, referred only to a direct liability on their part. It did not mean that creditors in the future should be postponed to themselves in case of a possible necessity for resorting to the trust property. It is not now contended that the creditors whose debts accrued under the management of Pomeroy have any direct claim upon the two other trustees. The several claims specially reported upon by the master * may be allowed, to be paid out of the trust

---

* These claims were for services rendered and disbursements made by attorneys and incurred by the trustees in the administration of the trust, for the services and disbursements of counsel and attorneys in both suits, and for the services of a guardian *ad litem* in the first suit.

fund, either as expenses of the administration of the trust, or as the costs of parties properly brought before the court in a suit to determine the duties of the trustees, no objection being made by any party. Under the above decision, there is no need to classify them further. *Abbott* v. *Bradstreet,* 3 Allen, 587. 2 Perry on Trusts, § 910. 2 Dan. Ch. Pract. (4th Am. ed.) 1412.

*Decree accordingly.*