## PACKARD *v.* KINGMAN.

109  497
116  166
109  497
146  562

1. TRUSTS AND TRUSTEES—POWER TO EXECUTE NEGOTIABLE PAPER —CONSTRUCTION OF WILL.

Executors under a will whereby the testator devised and bequeathed all of his estate to his executors in trust for a term of years, with full power to sell and mortgage, "in order that his estate might be kept together until his various business interests could be closed up advantageously," have power, for the benefit of the estate, to execute negotiable paper, to mature within the time limited for the continuance of the trust, in extension or renewal of obligations upon which the deceased was liable at the time of his death, and to borrow money in the usual course of business to meet such obligations, and to bind the estate thereby and therefor.

2. SAME—PERSONAL LIABILITY OF TRUSTEE.

A trustee, having power to bind the trust estate, may so contract on its behalf as to exclude his personal liability.

109 MICH.—32.

Appeal from Calhoun; Smith, J. Submitted May 19, 1896. Decided May 26, 1896.

Bill by Mitchell N. Packard and others, executors, against Caroline B. Kingman and others, to construe the will of Richmond Kingman, deceased. From a decree for complainants, defendants appeal. Affirmed.

*Hulbert & Mechem*, for complainants.

*L. E. Clawson*, for defendants.

HOOKER, J. The complainants are executors of the estate of Richmond Kingman, and file the bill in this cause, asking a construction of his will that shall settle their power to make, execute, and deliver negotiable paper and pledges of the property of said estate that shall be binding upon said estate, for the purpose of extending indebtedness secured by such paper made by the testator, and also for the purpose of obtaining money wherewith to pay such maturing paper. All persons interested in said estate are adults, and all are made parties defendant, except Howard R. Kingman, who is the son of the testator, and one of said executors, and who joins as complainant. All of the four persons named in the will as executors qualified as such, but one resigned, and another died, and their places were filled by appointment by the probate court. All of the allegations of the bill are admitted by the defendants, who all appeared and answered. The answer, however, contains the following paragraphs, viz.:

"11. These defendants jointly and severally state to the court that they are respectively each possessed of a separate and independent estate assigned and apart from and in addition to such estate as may come to them, and to which they are respectively entitled, under the said will of said Richmond Kingman, deceased, and do not desire in any improper way to create or add to the perplexities which the complainants are meeting in the administration of said estate; but that, nevertheless, these defendants,

each and every one, stand strictly on their legal rights under said will, according to the phraseology thereof, and the true intent and meaning thereof, as set forth by said instrument itself, and not otherwise, and state and represent to the court that if the effect of said instrument is, in law and under the facts which are in said bill alleged and by these pleadings admitted, to give to the complainants herein the power which they claim under the eleventh clause of said bill, these defendants will willingly submit to and abide by such construction and adjudication; but that these defendants have declined, and do decline, to commit themselves to any construction of said will except such as the court of competent jurisdiction may determine and announce.

"12 These defendants, further answering, admit that complainants are entitled to a construction of said will, and join in the request for a construction of said will as prayed for, and pray that their reasonable costs and charges in this behalf may be borne by and paid out of said estate, and not by them individually."

The question in this case is whether the power claimed is confided, by the will, to the complainants.

The following is a copy of said will, except the formal parts:

"*First.* After the payment of my just debts and funeral expenses, I give, devise, and bequeath unto Roldon P. Kingman, Howard R. Kingman, and Fred M. Wadleigh, all of Calhoun county, Michigan, and Mitchell N. Packard, of the city, county, and State of New York (the executors of this, my will, hereinafter named), and to the survivors and survivor of them, or to such of them as may from time to time qualify as such executors, and to their successors and assigns, all of my estate and property, real, personal, and mixed, of whatsoever kind and description, and wheresoever situate, in trust, nevertheless, for the uses and purposes following and herein stated, and no other, that is to say: That my said executors take possession of all my said estate and property as aforesaid, and to hold the same, and to collect the rents and profits thereof arising from my said estate and property during all the time they hold the same; and to sell and dispose of my said estate and property, or of so much and such parts thereof as they may deem for the

best interests of my estate; and to invest my said estate and any of the income thereof in such manner as they shall deem judicious, and in such securities as they may see fit; and to reinvest the same so often as may be necessary; and that such securities may be other than those prescribed by statute or law for the investment of trust estates, any statute or law to the contrary notwithstanding. And I do hereby give to my said executors, or to such of them as may from time to time qualify as such executors, and to their successors and assigns, full power and authority to grant, alien, bargain, sell, convey, mortgage, lease, and assure all or any of my said estate, real, personal, and mixed, to any person or persons, and their heirs and assigns, forever, by all and every such lawful ways and means in law as to them and their counsel learned in the law shall seem fit or necessary. And in case of sale of any part of my said estate, whether real or personal, I direct that it may be either at public or private sale, as to my said executors may seem best and most judicious; and in carrying out the provisions of this, my will, I hereby authorize and empower my said executors to make, execute, and deliver all necessary deeds, mortgages, leases, releases, and other papers (provided that nothing herein contained shall authorize my said executors to lease any of my real estate beyond the time herein fixed for the termination of this trust). Out of the interests, incomes, and profits which shall accrue from my estate so held in trust as aforesaid, I will and direct the following sums to be paid to my wife and children, in semiannual payments, during the continuance of the trust herein, and I give, devise, and bequeath to my said wife and children out of said interests, incomes, and profits as follows, to wit: To my wife, Caroline B. Kingman, the sum of five thousand dollars per year; to my daughter, Emily K. Taft, the sum of sixteen hundred and sixty-six dollars and sixty-six cents per year; to my son Howard R. Kingman, the sum of sixteen hundred and sixty-six dollars and sixty-six cents per year; and to my son Richmond T. Kingman, the sum of sixteen hundred and sixty-six dollars and sixty-six cents per year. Should my said wife or any of my said children die during the continuance of this trust, her or his portion or share of said interests, incomes, and profits shall be paid to her or his heirs and assigns. The trust herein and hereby created in this clause of my will shall terminate five years from

the date of the probating of my will in the county of which I may die a resident; and my object in creating the aforesaid trust is in order that my estate may be kept together in the manner herein provided until my various business interests can be closed up advantageously to my said estate, and administered upon by my executors and trustees for the best interests of my wife and children, and judging that that length of time will be necessary so to do.

"*Second.* Upon the termination of the trust created in the preceding clause of this, my will, I hereby direct my executors and their successors, *and their successors,* and the survivor and survivors of them, or such of them as may from time to time qualify, and to their successors, to divide my said estate and property into four equal portions. And I hereby give, bequeath, and devise the first part or portion thereof to my said wife, Caroline B. Kingman, and her heirs and assigns, forever; and the second part or portion thereof to my daughter, Emily K. Taft, and to her heirs and assigns, forever; and the third part or portion thereof to my son Howard R. Kingman, and to his heirs and assigns, forever; and the fourth or remaining part or portion thereof to my son Richmond T. Kingman, and to his heirs and assigns, forever.

"*Third.* The legacies and bequests hereinbefore made to my said wife, Caroline B. Kingman, are made to her, and are to be by her received, in lieu of all rights of dower, homestead, and support.

"*Fourth.* I hereby nominate and appoint Roldon P. Kingman, Howard R. Kingman, and Fred M. Wadleigh, all of said county of Calhoun, Michigan, and Mitchell N. Packard, of the city, county, and State of New York, and the survivors of them, or such of them as shall at any time qualify, to be the executors of this, my will, and trustees of my estate, as herein provided; and it is my wish and will that my said executors shall not be required to execute any bond or security for the faithful performance of their duties as executors or trustees, and they shall not be held liable for any losses to my estate except by their own willful default."

It is asserted that this will should be construed in the light of the circumstances surrounding its execution; and the following facts appear, both by admissions contained in the answer and by the depositions of witnesses

acquainted with the facts: Richmond Kingman died January 26, 1895, and his will was admitted to probate February 28, 1895. All of the executors qualified. Wadleigh, one of the executors, resigned September 24, 1895; and R. P. Kingman, another of said executors, died December 17, 1895. The probate court appointed, as their respective successors, S. S. Hulbert, October 8, 1895, and Brainard T. Skinner, February 7, 1896; and letters testamentary were duly issued. Subsequently, upon petition to the circuit court in chancery, the four executors were appointed executors and trustees, upon an *ex parte* application by them, and such action was certified to the probate court. Richmond Kingman had a large estate, including farms in North Dakota aggregating $100,000. Among his assets was $50,000 of stock in the Pneumatic Torpedo & Construction Company, a corporation of the State of New York, engaged in the production of the "Zalinski Dynamite Gun." He also had bonds of said corporation to the amount of $32,500. He also held stock to the amount of $46,000 in the Duplex Printing-Press Company, a Michigan corporation, at Battle Creek, Mich. He was active in the management of both of these concerns, and lent his name and credit to them. At the time the will was made, in July, 1894, and at his death, his name was upon large amounts of negotiable paper, for money loaned by banks and private capitalists to said Duplex Printing-Press Company, said Pneumatic Torpedo & Construction Company, and for his other various business interests; in some cases as sole and original maker, in some cases as joint maker with others, but in the majority of cases, and to the largest amounts, as indorser with other stockholders of said Duplex Printing-Press Company and said Pneumatic Torpedo & Construction Company, and paper principally made by said respective companies for money used and to be used by said respective companies in their legitimate and chartered business.

The bill alleges, and it is admitted as well as proved,

that said Richmond Kingman, deceased, well knew that said paper upon which his said name was, as aforesaid, was and would be falling due from time to time in various sums and amounts, in the hands of the said various banks, money lenders, and private capitalists; that a prime and primary object of said Richmond Kingman, deceased, in so creating said five-years trust, was to enable his executors and trustees to pledge, bind, and charge the credit, resources, and assets of his estate, real and personal, in extending and renewing, as well as paying, obligations and evidences of debt outstanding as aforesaid, upon which his name was as aforesaid, and in giving new evidences of debt therefor, and in raising new funds with which to carry on, develop, and bring to completion his various enterprises, all within the five-years limit, and all within the discretion of his said executors and trustees; that in spite of the intention of said Richmond Kingman, deceased, and the terms of said will, the sundry money lenders and capitalists who hold the paper upon which the name of said Richmond Kingman, deceased, was at the time of his death, decline to accept renewals of negotiable paper and promises to pay which bore the name of said Richmond Kingman, deceased, and decline to loan new funds when complainants offered and tendered promises to pay and negotiable paper made by complainants, as executors, administrators, and trustees, to bind and charge the assets of said estate in extensions, renewals, or in the making of new paper and the borrowing of new funds, while still other banks and money lenders are willing to take the signatures of complainants as binding and charging said estate for the purposes aforesaid; but complainants, by reason of the doubts which have been expressed in regard to their power and authority under said trust and said will, are afraid to sign their names in the capacities aforesaid, upon promises to pay, for fear that it might be held that, under the language of the will, they would not have the authority and power to bind said estate, and that the result of such acts upon

their part would be to only bind and charge themselves, personally and individually, for matters in which they would have no personal interest whatever; that they are in great doubt and perplexity as to the proper course which they should pursue, lest, on the one hand, they may be held recreant to their trust, in not carrying on said enterprises, and enhancing the value of the assets of said estate, if the proper construction of the will be such as to give them authority to renew, extend, and borrow new funds, as aforesaid, if in their discretion they see fit so to do, and, on the other hand, lest, if they should make and put out such promises to pay, they might involve themselves and the estate in expensive and protracted litigation by reason of the will's being held not to give to complainants the power to so charge the estate as aforesaid, and that the result of such acts would be to only bind themselves; that, so far as the administration of said estate has progressed, occurrences have repeatedly arisen, and now exist, and are confronting the executors, where, if they have the power under said will to act as aforesaid, it would most manifestly and clearly be for the best interest of said estate to extend and renew obligations as aforesaid, and in some instances to borrow new funds as aforesaid; and that the executors can readily obtain all necessary extensions and renewals and new funds if they be held to have the power and authority to charge said estate therefor and therewith.

The bill prayed that—

"The court consider said will, and define and make plain to your orators their power and authority as executors and administrators with the will annexed, and trustees, to, in their discretion, and subject to the rules of law as to abuse of discretion, sign, execute, deliver, negotiate, and put out negotiable instruments and promises to pay, singly or jointly with others, in extension or renewal of the obligations upon which said Richmond Kingman, deceased, was at the time of his death, and, within their discretion as aforesaid, to borrow new funds as aforesaid, and to bind, pledge, and charge the estate and assets of said

Richmond Kingman, deceased, and not themselves, your orators, by their said acts; and ask that said Caroline B. Kingman, Emily K. Taft, and Richmond T. Kingman, defendants herein, may appear and answer this bill without oath, their answer under oath being hereby expressly waived; and pray the court to settle the controversy aforesaid, and construe said will, and declare its legal effect in the matters aforesaid, and determine the power of your orators in the premises, and relieve your orators from their perplexity."

The circuit court made a decree in substantial conformity to the prayer of the bill, except as to the binding effect upon the trustees personally, and an appeal has been taken by the defendants.

Provisions in wills may be such that a trust is necessary to carry out and enforce them, and the general rule that "the form of the instrument by which a trust is sought to be created is immaterial, and that no technical words are necessary," applies to wills, and no arbitrary rule exists for determining whether or not a trust has been created by a will; each case being determined according to the language and in accordance with the apparent intention, the trust being enforced where it was intended, provided it is sufficiently definite, certain, and complete. *Negroes Chase* v. *Plummer*, 17 Md. 165; *Smith* v. *Bell*, 6 Pet. 75; *Hess* v. *Singler*, 114 Mass. 56; *Warner* v. *Bates*, 98 Mass. 274; *Spooner* v. *Lovejoy*, 108 Mass. 529; *Carr* v. *Richardson*, 157 Mass. 576. In the latter case it was held that the intent of the testator must govern, and that no trust was created, notwithstanding the use of the words "in trust." See, also, *In re Hawley*, 104 N. Y. 250; *Rowe* v. *Rand*, 111 Ind. 206. In *Ward* v. *Ward*, 105 N. Y. 68, it is held that "although a will contains no words creating a trust, if, from the will and a codicil thereto, it can be implied that it was the testator's intent to establish a trust in the executors, for objects declared and set forth in the will, it is sufficient." See, also, *Earle* v. *Earle*, 48 N. Y. Super. Ct. 18; *Walker* v. *Whiting*, 23 Pick. 313; *Fay* v. *Taft*, 12 Cush. 448; *Hoxie*

v. *Hoxie*, 7 Paige, 187; *Robert* v. *Corning*, 89 N. Y. 225; *Forsyth* v. *Rathbone*, 34 Barb. 388; *Downing* v. *Marshall*, 23 N. Y. 366 (80 Am. Dec. 290); *Ellis* v. *Secor*, 31 Mich. 185; *Chadwick* v. *Chadwick*, 59 Mich. 87; *Loring* v. *Palmer*, 118 U. S. 321; *Rock River Paper Co.* v. *Fisk*, 47 Mich. 221; *King* v. *Merritt*, 67 Mich. 194.

The will in question, in terms, creates a trust beyond that for mere settlement and distribution by the ordinary methods. Its first paragraph gives and devises all of the testator's property to certain named executors, and their successors and assigns, in trust, for uses and purposes to be stated. It gives full power to dispose of property, and to mortgage it. The trust is limited to five years, and testator's object in creating it is said to have been "that his estate might be kept together until *his various business interests could be closed up advantageously to his estate*." The testator appears to have been careful to provide that the trust might be executed by others than those named as executors, if occasion should require. Under the will and the facts shown, we are convinced that it was the intention of the testator to provide for the conduct and care by his executors of his business interests, until they could be realized upon, within the limit that he set; and while we do not mean to imply that his trustees might enlarge his obligations already existing, by furnishing new and additional financial aid to the corporations mentioned in the bill, we are of the opinion that they might properly, and where it should appear for the best interests of the estate, extend or renew existing obligations of the estate, or borrow money in the usual course of business to meet obligations when due. It is competent for a testator to provide for the continuance of his business, and he may, if he deems it best, subject all of his property to such purpose, as he seems to have done in this case. *Ferry* v. *Laible*, 31 N. J. Eq. 567; *Mason* v. *Pomeroy*, 151 Mass. 164; *Hewitt* v. *Phelps*, 105 U. S. 393; *Burwell* v. *Cawood*, 2 How. 560; *Willis* v. *Sharp*, 113 N. Y. 586, and cases cited; *Printup* v. *Trammel*, 25 Ga. 243.

While we hold that it is within the power of the executors to perform the acts mentioned, and, therefore, that the estate would be bound thereby, we do not overlook the rule that the effect of such contracts is usually to bind the trustee personally, and that the other contracting party must pursue his remedy against the trustee. This doctrine is established by a list of cases, long and generally uniform. *Short* v. *Porter*, 44 Miss. 535; *Woods* v. *Ridley*, 27 Miss. 119; *Bloom* v. *Wolfe*, 50 Iowa, 286; *Norton* v. *Phelps*, 54 Miss. 471, 105 U. S. 393; *Clopton* v. *Gholson*, 53 Miss. 471, and cases cited; *Mason* v. *Pomeroy*, 151 Mass. 166. In some cases it is held that, where the estate has had the benefit of the contract, the creditors may resort to the trust fund, if the trustees are insolvent or beyond seas, subject, however, to the rules of equity applicable to the case. See *Mason* v. *Pomeroy*, 151 Mass. 167; *Odd Fellows Hall Association* v. *McAllister*, 153 Mass. 292. There are cases, however, which hold that a trustee, having power to bind the estate, may so contract as to exclude a right to recover against him. The case going the furthest, so far as we have found, is *Printup* v. *Trammel*, 25 Ga. 243; and that goes so far that we think it at variance with the rule above stated, *i. e.*, that "usually the trustee, and not the estate, is bound." *Bloom* v. *Wolfe*, 50 Iowa, 288, impliedly recognizes the right of the trustee to exclude his personal liability, if he so make his contract. *Glenn* v. *Allison*, 58 Md. 527, is to the same effect; also, *Thayer* v. *Wendell*, 1 Gall. 37. See, also, *Day* v. *Brown*, 2 Ohio, 345, and other cases cited therein. So far as examined, these cases mentioned are cases arising upon covenants contained in mortgages executed by the trustee, but we think the rule is not necessarily limited to such cases. See, also, *Fowler* v. *Insurance Co.*, 28 Hun, 195. Where the parties expressly contract that no personal liability shall attach to the trustee, the creditor would necessarily depend upon such liability as might lawfully

be created against the estate, and it is possible that his remedy might be limited to a suit in equity.

It will therefore be decreed that under the will of Richmond Kingman, deceased, set forth in the bill herein, his executors, administrators with the will annexed, and trustees, and their several successors in office, have authority and power, as such executors, administrators, and trustees, to, in their discretion, and subject to the rules of law as to abuse of such discretion, sign, execute, deliver, negotiate, and put out negotiable instruments and promises to pay, in extension or renewal of obligations upon which said Richmond Kingman, deceased, was liable at the time of his death, and the same to re-extend and renew within their discretion as aforesaid, and to thereby bind, pledge, and charge the estate and assets of said Richmond Kingman, deceased; and that said executors, administrators, and trustees, as such, within their discretion, and subject to the rules of law as to the abuse of such discretion, have power and authority to borrow new funds, and to bind and pledge the estate and assets of said Richmond Kingman, deceased, thereby and therefor; all such renewals and borrowings to be for the benefit of said estate, and to mature within the five-year limit of the trust estate specified in said will.

LONG, C. J., GRANT and MOORE, JJ., concurred. MONTGOMERY, J., took no part in the decision.