BERTHA MOORE *et al.* Plaintiffs in Error, *vs.* W. W.
MCFALL *et al.* Defendants in Error.

*Opinion filed June 16, 1914.*

1. WILLS—*a testator may provide in will for carrying on business—liability of estate for debts.* A testator may provide in his will for the establishment of a business after his death or for the continuation of one already established and may devote a part or the whole of the estate to that purpose, and that portion of the estate so devoted to such purpose is liable for debts contracted in the prosecution of the business.

2. SAME—*when reason for rule requiring most clear language to subject all of estate to business debts does not exist.* The reason for the rule that a will should not be construed as subjecting the entire estate to liability for debts contracted in carrying on a business as directed by the will unless the will itself so provides in most clear language does not exist where the entire estate is given to a trustee and there are no specific devises or legacies.

3. SAME—*when the entire estate is subject to business debts.* Where the testator gives his entire estate to his wife for life or until she re-marries and at her death or re-marriage the property to descend to the testator's heirs at that time, and the widow is given absolute control of the estate for the care and education of the children, paying the debts of the estate and supporting herself, and as a means of accomplishing such purposes is directed to carry on the testator's established business after his death, all of the estate is subject to debts contracted in carrying on the business.

4. EQUITY—*when irregularity in taking judgment by confession should not defeat payment of debt.* Where money is borrowed by the executrix for the purpose of carrying on a business as directed by the will of her husband and the money has not been re-paid and there is no question of limitations involved, the fact that there may have been an irregularity in taking judgment by confession on the note given by the executrix does not warrant a court of equity in holding that the claim should not be paid out of assets of the estate liable for the debts of the business.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Franklin county; the Hon. J. R. CREIGHTON, Judge, presiding.

THOMAS J. LAYMAN, and WILLIAM B. JOHNSON, for plaintiffs in error.

GEORGE B. GILLESPIE, (SPILLER & MILLER, and GILLESPIE & FITZGERALD, of counsel,) for defendants in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This case comes to this court by *certiorari* from the Appellate Court for the Fourth District.

The controversy arises out of differences between the parties as to the construction to be placed on certain clauses of the will of John J. St. Clair. Those portions of the will in regard to the meaning of which the differences of opinion exist are as follows:

"It is my will and desire that my business, hardware, furniture, tinshop and business as transacted by me be continued, and for this purpose and the care and education of my children having confidence in my wife, Rebecca St. Clair, I will and bequeath to said Rebecca St. Clair, my wife, all my real and personal property of whatsoever kind, all title and interest therein, and for the purpose of paying my just debts and education and support of herself and my family, I hereby authorize her, if necessary, to sell and dispose of any of said property and real estate without any order or decree of court, and that she pay all debts that may be just without the intervention of court, and do and perform all things whatsoever in regard to my property for the purpose of carrying out this will as I might lawfully do, subject, however, to this condition: that in case of the marriage or death of my wife, Rebecca, that my property of all kinds, real and personal, shall descend to my lawful heirs at that time being, according to the law of descent. And for the purpose of carrying out this will I hereby appoint my wife, Rebecca St. Clair, the executrix of this will without executing bond as such executrix. I desire my business carried on in the name of St. Clair Bros., and authorize and

empower my executrix to execute deeds of conveyance to property she may desire to sell."

The testator died soon after the execution of his will. He left surviving him his widow and nine children. The oldest of the children was at the time of the death of the testator about twenty-two and the youngest about two years of age. All of the testator's children were living at home at the time of their father's death except Emma, the oldest, who was married. At the time of his death, and for a number of years prior thereto, St. Clair had been engaged in the hardware, furniture and tinning business in the city of Benton, in Franklin county, Illinois. He owned lots 3 and 4 in the city of Benton, and lots 15 and 16 in the southeast quarter of section 18, township 6, south, range 3, east of the third principal meridian, in Franklin county. He occupied the said premises as a family homestead, and his widow, Rebecca St. Clair, continued to occupy the same as her homestead until her death, which occurred on February 16, 1912. This suit was commenced by plaintiffs in error, as the heirs of the testator, to partition said real estate, and defendants in error, as creditors, answered, and filed cross-bills claiming liens.

While this is a partition suit there is no controversy involving a freehold. The only question in dispute is between the heirs and certain creditors who are seeking to have their claims satisfied out of the proceeds of the real estate.

The claims of defendants in error are based on transactions occurring several years after the testator's death. They were not claims against the estate of the testator at the time he died, but were created for the purpose of carrying on the business of the testator by the executrix after his death. Defendants in error contend that their claims, which were contracted in the prosecution of the business directed to be carried on by the will, are equitable liens upon the assets of the entire estate and should be paid be-

fore there is any distribution to the heirs of the testator, and the trial and Appellate Courts sustained this contention. Plaintiffs in error contend that the testator did not devise his entire estate to his wife as a trust fund for the purpose of carrying on the business after the testator's death, and that under a fair construction of the will it should be held that only that portion of the estate which was employed in the business was pledged for the payment of debts contracted in the prosecution of such business.

It appears from the record that after the death of her husband the widow formed a partnership with her sons Charles and Guy, and the business was carried on by these parties in the name of St. Clair Bros. This was done in pursuance of the authority given to the widow by the will. For a time the business was prosperous, but in the year 1897 it became unprofitable and the partnership was dissolved and the business discontinued. At the time of his death the testator was in debt about $20,000. It was during the time that the business was being conducted by the widow and sons that the debts to defendants in error were contracted. There is no dispute as to the *bona fides* of defendants in error's claims. The only serious question is whether these debts are in equity a charge against the real estate of the testator which is sought to be partitioned among the plaintiffs in error. This question depends upon the construction to be given to those clauses of the will of St. Clair which we have quoted above.

A testator may provide in his will for the establishment of a business or for the continuation of one already established, and may devote a part or the whole of his estate for the purpose of carrying on such business after his death. (*Packard* v. *Kingman,* 109 Mich. 506; *Wild* v. *Davenport,* 48 N. J. L. 137; *Willis* v. *Sharp,* 113 N. Y. 590; *Mason* v. *Pomeroy,* 151 Mass. 167; 7 L. R. A. 774.) That portion of the estate, whether all or a part, which is by the will devoted to such purpose will be liable for debts

contracted in the prosecution of such business. The parties are in accord upon these general propositions, but they disagree upon the question whether the testator in the case at bar devoted the whole of his estate to the business to be carried on, or only that part which was then being used in said business.

Plaintiffs in error in support of their position rely with great confidence upon the case of *Ex parte Garland,* 10 Ves. Jr. 110. That case was decided by Lord Eldon in 1804. The case arose upon the construction of the will of Henry Ballman. Among other things the will directed that the testator's trade of milier and the farming business then carried on by him should be continued by Margaret Ballman, his widow, until the trustees should think proper to establish his sons, or either of them, in said business, and the will directed that the trustees, upon so settling the sons, or either of them, in the business, should permit them to check off the stock, crops and other effects in the business at a fair valuation and take an oath or bond from them for the amount, with four per cent interest. The testator directed that as long as the business should be carried on by his wife the profits thereof should be applied for her own use and for the maintenance and education of his children, and the will directed that the trustees should pay the wife not exceeding £300, which by a codicil was increased to £600, for the purpose of enabling her to carry on the said business. After the death of the testator the widow carried on the business for several years and became bankrupt. The trustees had advanced her the sum of £600, and the stock and effects employed in the business were valued at £1351. She had executed her notes both for the £600 advancement, as the will required, and also for the value of the personal effects, which notes were held by the trustees. At the time of her bankruptcy she was indebted to the trustees in respect to those two notes and also in the sum of £768 of the testator's assets which she

had received. The surviving trustee proved these claims under the commission against the bankrupt. The question arose whether the debts contracted by the widow in carrying on this business were chargeable to the whole estate or only to that portion which was employed in connection with said business. It was held that the general assets of the estate which had been distributed to other devisees under the will could not be pursued and held liable for the debts contracted in carrying on the business. It was pointed out in that case by Lord Eldon that great inconvenience would result from establishing a rule holding the general assets liable when there were other provisions of the will directing the payment of legacies to other persons. It was argued by the learned lord chancellor that such a rule would, in effect, make each devisee under the will a surety, to the extent of his legacy, for the debts that might be incurred in carrying on the business, and that if the business were carried on for a great number of years it would tend to tie up and embarrass the property of the estate in the hands of other devisees. Recognizing the inconvenience pointed out by the English court, Mr. Justice Story, of the United States Supreme Court, in *Burwell* v. *Cawood*, 2 How. 560, in discussing a question arising upon the construction of a will, remarked that "nothing but the most unambiguous language, demonstrating in the most positive manner that the testator intends to make his general assets liable for all debts contracted in the continued trade after his death and not merely limit it to the funds embarked in that trade, would justify the court in arriving at such a conclusion from the manifest inconvenience thereof."

The inconvenience that might result from holding the entire assets liable for debts contracted in carrying on a business under a will could not occur under wills like the one here involved, where the entire estate is given to a trustee for special purposes and there are no specific legacies to be paid under the will. Under the will of St. Clair all of

his property, both real and personal, is given to the wife during her life or widowhood and at her death or remarriage the property to descend to the heirs of the testator according to the laws of descent. The widow is likewise given power to sell or mortgage the property without any order or decree of court, and to do and perform all things whatever in regard to the property, for the purpose of carrying out the will, that the testator himself might lawfully do. The effect of this language is to vest the absolute control and management of the entire estate in the wife, so long as she lives or until she re-marries, for the care and education of the children, paying the debts of the estate and supporting herself, and as a means to accomplish these objects the testator provided that his business as transacted by him should be continued under the name of St. Clair Bros. As we construe the will before us, there is no indication that the testator intended to segregate a certain portion of his property and charge that portion with the burdens incident to carrying on the business and to exempt the residue from such liability. If such construction be adopted then it would become necessary to mark out the line of separation which is to divide that portion which is chargeable with the debts of the business from the remainder which is exempt therefrom. If we adopt such view the line of separation must be found by the courts by construction, for it is certain that the testator has made no attempt, by his will, to make such separation. It seems to us that the obvious intention of the testator was to place all of his property, without reserve, in the hands of his wife, in order that she might carry on the business as the testator had carried it on in his lifetime, leaving all of his estate as a fund in her hands to give the business credit and the commercial standing such as it had during the lifetime of the testator, and that in pursuance of this will any debt contracted by the wife in connection with the business would bind all of the property of the estate in precisely

the same manner that it would had St. Clair himself contracted such debt while the owner of the property and in connection with his business. Manifestly, the testator had great confidence in his wife's ability to manage his estate and carry on the business, and his intention seems to have been to place her in his stead in respect to his property and business, with directions to carry it on as he had done, for the purpose of supporting herself and caring for and educating their children. This was a lawful purpose and one that the testator had a right to accomplish by making a will with provisions for carrying his purpose into effect. *Mason* v. *Pomeroy, supra.*

The claim of defendant in error Cantrell was reduced to judgment by confession and afterwards twice revived by *scire facias.* Plaintiffs in error make the point that there was some irregularity in connection with the entering up of the judgment on the Cantrell claim by confession. We do not regard this point as having any force. The existence of the debt is not disputed, and if the judgment for any reason could be disregarded this would not cancel the debt. The money represented by this claim was borrowed and used in the business by the executrix of the will. At the time she so borrowed the money she held the property in controversy as a part of the assets of her husband's estate. The money has never been re-paid and no question of limitation is involved. In equity the property should be charged with the payment of this debt, regardless of any defects that might be pointed out to the proceeding by which it was reduced to judgment.

Finding no error in the record the judgment of the Appellate Court for the Fourth District is affirmed.

*Judgment affirmed.*